Petitioners appeal from transfer inheritance tax assessed and levied in respect of the estate of James Ingham, deceased, who died testate, a resident of New Jersey, on September 20th, 1939.
The sole ground of appeal is that the commissioner erred in his determination of the net taxable value of the property transferred under the will of decedent, by failing and refusing to deduct from the gross value the sum of $17,047.99, — which sum constituted the aggregate amount actually disbursed *Page 394 
by the testator himself as expenses of his last illness during the period of that illness.
Appellants contend that notwithstanding these expenses had been actually paid by testator prior to his death, nevertheless under the express provisions of the statute in force at his death, — (R.S. 54:34-5), — the commissioner should have deducted this sum in making his computation and assessment of tax.
True it is that the statute directs that the commissioner shall allow a deduction of a reasonable sum for funeral expenses and (expenses of) last illness; but it is not perceived that a sum in that behalf which included expenses actually paid by testator prior to his death could be deemed a "reasonable sum."
The statute (section 1 of chapter 34) imposes a tax upon the transfer of property by will; by section 2 it fixes the rate of taxation of such transfers at rates varying with the identity of the transferee and the amount or value of the property transferred to such transferee; and by section 5 it provides that the tax upon such transfer shall be computed upon the clearmarket value of the property transferred and provides that in determining that clear market value of the property transferred, "the following deductions and no others" shall be allowed. The deductions specified are (a) debts of decedent owing at the date of death; (b) a reasonable sum for funeral expenses and expenses of last illness; (c) administration expenses; (d) a pro rata
share of taxes for the year; and (e) transfer taxes imposed by other states.
The testamentary transfer, in legal contemplation, occurs at the date of death; and the value of the property so transferred (upon which the tax is to be computed) is its value as of the date of death. The value of the residuary estate (or shares therein) actually transferred by the will, however, must needs be ascertained and arrived at by deducting from the gross residuary estate left by decedent the amount required for the payment of his debts, funeral expenses, taxes, administration expenses, and the like. It is only the net amount remaining after such deduction which will actually have been transferred to the residuary beneficiaries, and upon which the tax on such transfers is to be computed. *Page 395 
Obviously the gross estate left by decedent at his death will in nowise be diminished by any expenses of last illness which have actually been paid by him prior to his death; and deduction of any such items, (in computing the tax on the transfers of residuary estate), would result in arriving at a value which would not be the "clear market value of the property transferred," (upon which the statute says the tax is to be computed), and would be unreasonable, unwarranted and unjustifiable.
Appellants base reliance on the fact that the statute, by the first clause in the list of deductions, directs the deduction of "debts of the decedent owing at the date of death," and then separately and in addition thereto directs the deduction of the reasonable sum for expenses of funeral and last illness. They say that since, by the earlier clause, the legislature had provided for the deduction of debts owing by decedent at his death, the additional direction for deduction of expenses of last illness must necessarily be intended to refer to something other than last illness expenses owing and unpaid at decedent's death, — must mean what it literally says, that there shall be deducted in addition to any and all debts (including those for last illness) owing at decedent's death, a further reasonable sum for expenses of last illness (whether paid or unpaid at decedent's death).
The answer to this is, that while it may well be assumed that the legislature, by the second clause, intended to refer to something other than, and different from, the things referred to in the first clause, nevertheless no interpretation is to be made which would necessarily lead to an impossible or absurd result. The result contended for by appellants would be an absurd result, — in view of the clearly expressed object and purpose of the statute, to impose a tax (inter alia) on legatees and devisees based on the value of the property transferred to them by the will. It is, however, quite possible to interpret the second clause as referring to something different from that referred to in the first clause, without arriving at a result so out of harmony with the legislative purpose.
Clearly funeral expenses are not debts of the decedent owing at the date of death; they are neither debts of the *Page 396 
decedent nor were they debts owing by anybody at the time of decedent's death. They are however debts of the decedent's estate, and the estate passing to residuary beneficiaries will be diminished thereby. Hence the provision for their deduction.
So also there well may be, and often are, debts incurred as expenses of last illness which are not incurred by decedent, and hence are not "debts of the decedent owing at the date of death." The last illness may be commenced by an accident or an embolism or hemorrhage or other pathological condition which renders the patient unconscious or mentally incompetent and such condition may exist continuously from the beginning until death. During such period indebtedness properly characterizable as "expenses of last illness," would naturally be incurred by members of his family or relatives or friends. Such debts, not being incurred by the decedent or with his authorization, would not be debts owing by the decedent at his death, yet they would be expenses properly payable by and out of his estate, reducing the property passing to residuary beneficiaries.
Beyond any reasonable doubt it was the intent and meaning of the legislature, in and by this second clause of deductions, to provide for deduction of such expenses of last illness which (like the funeral expenses with which they are bracketed) cannot strictly be said to be debts of the decedent owing at his death, but which are properly payable out of his estate and which reduce the amount of property passing to residuary beneficiaries (or intestate distributees).
On the other hand, it seems equally clear that it was not the intent of the legislature to provide for any deduction for expenses of last illness other than those by which the property passing to residuary beneficiaries will be diminished. The first sentence of the section is the thing of primary importance and significance, — the tax shall be computed upon the clear market value of the property transferred. The statute first imposes a tax upon transfers; it then specifies and defines the transfers to be taxed; it next provides the rates of tax on varying identities of transferees; and then, by this section specifies to what the rate shall be applied, — *Page 397 i.e., the clear market value of the property transferred by transfers made taxable under the act.
By "clear" market value, is meant, of course, net value. The tax being imposed upon the right of the legatee or devisee to receive property from a decedent is naturally to be computed only on the value of that which he receives. If there be a gift of realty or personalty worth $25,000, but which is subject to a lien or encumbrance of $10,000, that which the beneficiary received is of the value of only $15,000, and the tax is to be computed only upon that value. Likewise if there be a testamentary gift of decedent's entire estate to a sole beneficiary (or intestate succession by a single heir and next of kin) and decedent leaves at his death a house worth $25,000 and a bank account of $25,000, that which the beneficiary receives is not the gross estate of $50,000, but the net estate after the payment by the executor or administrator of debts, funeral and administration expenses, of, say, $5,000. Hence the provision that the tax be computed on the clear or net value of the property transferred; hence also the ancillary and subordinate provisions specifying the deductions to be made in arriving at that net value.
All of the specified deductions except the one in question (expenses of last illness) are clearly expenditures which are to be paid out of decedent's estate and by which the residuary estate will be diminished. The deduction in question is not necessarily one of different nature; it may equally well be interpreted as one of the same nature, and would naturally be so interpreted, having regard to the purpose and the other provisions of the act; and under the doctrine of noscitur asociis and the canons of construction providing for an interpretation in harmony with the purpose and other provisions of the statute, it will be so interpreted. Brandon v.Montclair, 124 N.J. Law 135, 11 Atl. Rep. 2d 304; CreditAdjusters and Collectors, Inc., v. Bergen Essex ConstructionCo., 124 N.J. Law 382, 11 Atl. Rep. 2d 755.
The clause in question is to be read as though there were added the words "paid out of decedent's estate subsequent to his death," or "by which the property passing to the testamentary beneficiary or intestate successor is actually diminished." *Page 398 
(It is perfectly possible, and by no means unknown, for a man to make, and pay for, prior to his death, the arrangements for his own funeral; but the payments so made by him would not diminish the property passing under his will).
A holding precisely similar to the present determination was made in Savings Investment and Trust Co. v. Martin, 119 N.J. Eq. 611,183 Atl. Rep. 286, — except that in that case it was made in respect to the deduction of "debts of the decedent" instead of "the expenses of last illness." Also in Dorrance v.Martin, 116 N.J. Eq. 204, 172 Atl. Rep. 503; affirmed, 13 N.J.Mis. R. 168, 176 Atl. Rep. 902; affirmed, *116 N.J. Law 362,184 Atl. Rep. 743, there was a holding essentially similar, — to wit, that the provision for the deduction of "debts of the decedent" is to be read as if the words "legally owing" were added thereto; and that the provision for the deduction of transfer taxes paid or payable to another state is to be read as if the words "for which there is a legal liability" were added thereto.
Appellants contend that the force and effect of the two cases just cited is destroyed by the fact that those determinations were made prior to a change in the statute in and by its enactment in the Revision of 1937. The argument is unsound, because the premise is untrue. The Revision of 1937 made no change in the statutory language as to the deductions from that comprised in Pamph. L. 1922, c. 174, p. 293; it simply separated the provisions into paragraphs and sub-paragraphs. That no implication of change in construction is to be drawn therefrom was expressly provided by the legislature in R.S. 1:1-4, 5. See also Crater v. Somerset County, *123 N.J. Law 407 at 414,8 Atl. Rep. 2d 691.
 The tax will be affirmed, with costs. *Page 399